UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JOHN KILBRETH, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 1:20 CV 193 ACL |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This action is before the Court on Defendant United States of America's Motion to Dismiss. (Doc. 6.) This matter is fully briefed and ripe for disposition.

**I.      Procedural Background**

Plaintiff John Kilbreth filed this negligence action against Defendants United States of America, Marty Norman Shelby, and Patti Suzane Shelby, regarding an accident that occurred on January 17, 2018 in Bollinger County, Missouri. (Doc. 1.) The Complaint alleges that Defendant Patti Shelby was a Rural Mail Carrier and employee of the United States Postal Service ("USPS"). Plaintiff states that Defendant Marty Shelby—Patti Shelby's husband—was operating a 1998 Jeep Cherokee that was clearly marked as a Rural Mail Carrier and was delivering the United States Mail under the direct supervision of Patti Shelby. Plaintiff was operating a 2000 Chevrolet 1500 automobile.

Plaintiff alleges that Marty Shelby turned in front of Plaintiff without warning on a county road while Plaintiff was passing Defendants' vehicle, causing a collision between the two vehicles. He alleges that the collision was caused by the negligence of Marty Shelby, in that Shelby failed to yield the right of way to a vehicle passing him, failed to keep a careful lookout, failed to use the highest degree of care, failed to signal his left-hand turn, and turned in front of

a passing vehicle when it was unsafe to do so.  In Count I of the Complaint, Plaintiff asserts a negligence claim against the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 2674 ("FTCA").  Count II is a state law negligence claim against Marty Shelby.  In Count III, Plaintiff asserts a negligence action against Patti Shelby for the negligence of Marty Shelby based on an agency theory.

Plaintiff's Complaint alleges that he provided written notice of his claim to the United States (via the USPS) on July 3, 2019, pursuant to the provisions of 28 U.S.C. § 2675.  On June 18, 2020, via certified letter, the USPS denied Plaintiff's claim.  The letter stated that "[t]he vehicle involved in this accident was not owned by the Postal Service and the driver was not a postal employee."  (Doc. 1 at p. 8.)

On November 10, 2020, the United States filed the instant Motion to Dismiss for lack of subject matter jurisdiction.  Defendant argues that, because neither Marty Shelby nor Patti Shelby were federal employees as defined by the FTCA, the doctrine of sovereign immunity bars this suit against the United States.

Plaintiff filed a Response in opposition to Defendant's Motion, in which he argued that the Shelby Defendants were employees under the FTCA, because the USPS exerted significant control over their conduct.  (Doc. 11.)  In the alternative, Plaintiff requested that the action be stayed and that the parties be granted limited discovery on the jurisdictional issue.  (Doc. 12)  The Court granted Plaintiff's alternative motion, and permitted the parties to engage in limited discovery on the issue of the Court's subject matter jurisdiction.  (Doc. 27.)  An Initial Case Management Order was issued, setting forth a schedule for discovery and additional briefing. (Doc. 28.)

After engaging in limited discovery, the parties filed supplemental briefs regarding Defendant's Motion to Dismiss.  (Docs. 29, 30, 31, 32, 33.)

## II.     Legal Standards

"[J]urisdiction is a threshold question, [and] judicial economy demands that the issue be decided at the outset rather than deferring it until trial." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). "A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (quotation and citation omitted). Thus, when ruling on a Rule 12(b)(1) motion, the Court may consider materials outside the pleaded allegations of the complaint. *Osborn*, 918 F.2d at 730. Moreover, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist. *Id.* "Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Id.* at 729.

## III.    Facts Related to the Shelby Defendants' Employment

The information contained in this section has been taken from the exhibits attached to the parties' supplemental briefs:

The USPS contracts with independent contractors to provide mail delivery service on behalf of the USPS. (Doc. 7-1 at p. 2.) Under these contracts, the independent contractor provides drivers that deliver mail on certain routes not serviced by USPS City or Rural carrier employees. *Id.*

Patti Shelby entered into such a contract with the USPS to deliver mail to USPS customers in Zalma, Missouri. *Id.* at p. 3. Specifically, the USPS entered into a renewal of Contract Delivery Service Route Contract Number 63765 ("Contract") with Patti Shelby for a two-year contract term, from April 1, 2017, to March 31, 2019, for the delivery of mail on a route for the Zalma, Missouri Post Office. *Id.*

Under the Contract, the services provided by Patti Shelby were performed in her capacity as an independent contractor. (Doc. 7-2 at p. 1-2.) Patti Shelby testified in her deposition that she is self-employed. (Doc. 30-1 at p. 18.)

Patti Shelby is referred to by the USPS as a "Contract Supplier," as distinguished from a "Rural Carrier," which is a USPS employee. (Doc. 30-2 at p. 14.) Both Contract Suppliers and Rural Carriers deliver mail. *Id.* at p. 17. Patti Shelby, pursuant to the Contract, was required to provide her own vehicle to transport and deliver the mail. (Doc. 7-1 at p. 4; Doc. 7-2 at p. 3.) Some Rural Carriers are provided delivery vehicles by the USPS and others provide their own vehicles. (Doc. 30-2 at p. 14-15.) The USPS requires Rural Carriers to undergo a daily vehicle inspection for safety purposes before they leave the Post Office to deliver mail, whereas it does not require Contract Suppliers to undergo a daily vehicle inspection. *Id.* at p. 23. The USPS also provides driver training for Rural Carriers, but not for Contract Suppliers. *Id.* at p. 22. In order to discipline a Rural Carrier, the Postmaster must follow a step-by-step process according to the union contract. *Id.* The Postmaster is not involved in disciplining or discharging a Contract Supplier. *Id.* at 26. Contract Suppliers and their hired drivers are not permitted to join the USPS unions. *Id.*

The Postmaster enters the Rural Carriers' time on a daily basis and at the end of the pay period and submits the time to the district office, so that they are compensated. *Id.* Rural Carriers are paid by the USPS every other week, and their pay is based on a route evaluation. *Id.* Patti

Shelby is paid once a month under the Contract, based on her negotiated annual rate. (Doc. 30-1 at p. 19.) The Postmaster is not typically involved in the process of paying Contract Suppliers, other than submitting any claims of extra mileage to a program in Denver to ensure the Contract Supplier receives compensation for that extra mileage. (Doc. 30-2 at p. 28.) When extra mileage is not sought by a Contract Supplier, the Postmaster only "glances at" the Contract Supplier's time sheets. *Id.*

Under the Contact, Patti Shelby was required to maintain a liability insurance policy for all motor vehicles used in furtherance of the Contract. (Doc. 7-1 at p. 4.) The Contract also provided that Patti Shelby was responsible for all damage to persons or property that occurs as a result of Patti Shelby's omissions or negligence. *Id.* at p. 6.

At the time of the accident on January 17, 2018, Marty Shelby was an employee of Patti Shelby. (Doc. 7-2 at p. 2.) The Zalma Postmaster had no authority or control over Marty Shelby's schedule, compensation, or benefits, and did not supervise him. *Id.* Patti Shelby supervised her drivers, including Marty Shelby. *Id.*

## IV. DISCUSSION

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586 (1941) (citations omitted). Federal courts generally lack jurisdiction to hear claims against the United States because of sovereign immunity. *Barnes v. United States,* 448 F.3d 1065, 1066 (8th Cir. 2006). The court may hear the case, however, if the plaintiff shows that the government has unequivocally waived that immunity. *Id.* The scope of waivers of sovereign immunity must be strictly construed. *LaFromboise v. Leavitt,* 439 F.3d 792, 795 (8th Cir. 2006), citing *Lane v. Pena,* 518 U.S. 187, 192 (1996).

The FTCA waives sovereign immunity for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).  The Act defines Government employees to include "officers or employees of any federal agency ... and persons acting on behalf of a federal agency in an official capacity," but excludes independent contractors.  28 U.S.C. § 2671.  The FTCA allows an action to proceed against the United States for "personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. §§ 1346(b), 2671.  Thus, Congress has expressly limited the United States' waiver of immunity under the FTCA to liability for the acts and omissions of its employees, not independent contractors.  *See United States v. Orleans,* 425 U.S. 807, 813-14 (1976); *Rutten v. United States,* 299 F.3d 993 (8th Cir. 2002).

The United States argues that, at the time of the accident, Patti Shelby was an independent contractor and Marty Shelby was her employee.  Because the Shelbys were not employees of the USPS and no FTCA claim may arise out of their actions or omissions, the United States argues that the Court lacks subject matter jurisdiction over Plaintiff's claim against the United States.  To support their argument, Defendant United States attaches the declaration of  Bertrum Manchego, a Contracting Officer for the USPS in Aurora, Colorado (Doc. 7-1 at pp.1-6); the Contract (Doc. 7-1 at pp. 7-70); the declaration of Tiffany Lutes, Postmaster of the Zalma, Missouri Post Office (Doc. 7-2); the deposition testimony of Patti Shelby (Doc. 30-1); the deposition testimony of Ms. Lutes (Doc. 30-2); and the deposition testimony of Mr. Manchego (Doc. 30-3).  The United States argues that these documents

demonstrate that Patti Shelby is an independent contractor because: (1) the USPS had no day-to-day control or authority over Patti Shelby or her employees; (2) Patti Shelby was responsible for supervising and controlling services provided under her contract to the USPS; (3) she was responsible for providing, maintaining, and insuring her own equipment and did not use USPS vehicles to transport or deliver mail; (4) she could hire and manage her own subcontractors; and (5) she was obligated to take certain safety precautions to protect her subcontractors, the public, and the environment.

In response, Plaintiff points to other facts in the same documents to demonstrate that the Shelbys were government employees, and thus subject matter jurisdiction is proper. In sum, Plaintiff points to the following facts: (1) the USPS requires that vehicles used by the Shelbys and other Contract Suppliers be a good representation of the USPS; (2) most USPS rural customers cannot tell the difference between a Contract Supplier and a Rural Carrier; (3) the USPS supplies the mail sorting case, boxes, trays, keys, scanners, and supplies on a day-to-day basis for both its Rural Carriers and Contract Suppliers; (4) the USPS requires Contract Suppliers to dress in a professional manner; (5) driving erratically could lead to actions against the Contract Supplier's contract; (6) the Postmaster has had conversations with Patti Shelby regarding misplaced mail; (7) Postmaster Lutes testified that she oversees all of the carriers and that she supervises Patti Shelby "from a distance" (Doc. 30-2 at p. 8); (8) Postmaster Lutes testified that USPS employees watch Contract Suppliers from a distance to make sure they do not waste time; (9) Contract Suppliers perform the same mail delivery services as Rural Carriers; and (10) Contract Suppliers must undergo background checks and drug tests. (Doc. 29 at pp. 5-16.)

"A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *Orleans*,

425 at 814 (quoting *Logue v. United States*, 412 U.S. 521, 528 (1973)); *see Knudsen v. United States*, 254 F.3d 747, 750 (8th Cir. 2001) (courts must "evaluate the extent to which the government has the power to supervise the individual's day-to-day operations") (citing *Orleans*, 425 U.S. at 814)).  In some instances, the government may exercise such pervasive control over the work performed by the employees of its independent contractor that, for purposes of the FTCA, the contractor's workers are essentially government employees.  *Kirchmann v. United States,* 8 F.3d 1273, 1275 (8th Cir. 1993).  An entity that hires a contractor may reserve the right to ensure general performance of the contract, without converting an independent contractor relationship into an employer-employee relationship.  *See Pauley v. Ball Metal Beverage Container Corp.*, 460 F.3d 1069, 1074 (8th Cir. 2006).  Similarly, a contractor whose physical performance is not subject to governmental supervision is not an employee for the purpose of the FTCA "simply because they are performing tasks that would otherwise be performed by salaried employees of the Government."  *Logue*, 412 U.S. at 532.

      Here, there is no evidence that, in supervising and administering the Contract, the USPS controlled the detailed physical performance of Patti Shelby or Marty Shelby.  That control was entrusted to Patti Shelby.  Patti Shelby testified that she spoke with Postmaster Lutes "[o]nly on an as-needed basis."  (Doc. 30-1 at p. 23.)  Postmaster Lutes described her supervision of Patti Shelby as "from a distance."  (Doc. 30-2 at p. 8.)  She explained that she is not located in the same office as Patti Shelby, and they "rarely" speak.  *Id.* at p. 9.  Patti Shelby "pretty much does her job and I don't have to be involved every day unless there is an issue that's brought to me by her, the clerk, or a customer."  *Id.*  Postmaster Lutes testified that she has only had to speak with Patti Shelby about problems concerning her delivery of the mail "a couple of times."  *Id.*  Patti Shelby testified that she has "to answer to" the contracting officer, but she

only speaks with him if she has a question regarding her contract. (Doc. 30-1 at p. p. 20.) She explained that she speaks with the contracting officer "probably not even once a year," and has spoken to him on the phone "maybe ten times" in the 22 years she has had a contract with USPS. *Id.* Patti Shelby received no driver training or training on how to deliver the mail. *Id.* at p. 13-14.

It is undisputed that Patti Shelby was responsible for the hiring, firing, and supervision of her employees. She trained her drivers, paid them for their training "out of [her] pocket", and paid them directly for their mail delivery services. *Id.* at pp. 7, 16, 19. If any issues arise regarding the delivery of mail by Patti Shelby's employees, Postmaster Lutes will contact Ms. Shelby and Ms. Shelby "will take it from there and talk to her employee, because they work for her." (Doc. 30-2 at p. 30.) If Patti Shelby is ill and unable to deliver the mail, she is responsible for finding an employee to deliver the mail. *Id.* at 31.

Patti Shelby provided and insured her own vehicle that was used to transport and deliver mail. Patti Shelby testified that, if her vehicle broke down while on her delivery route, she would not have to call the Postmaster or any other USPS employee. (Doc. 30-1 at p. 23-24.) Under her Contract, she was responsible for all damage to persons or property that occurs as a result of her negligence. (Doc. 7-1 at p. 6.)

While it is true the USPS maintained standards regarding the vehicles used by Contract Suppliers and required Contract Suppliers to dress professionally, these terms do not rise to the requisite level of supervision necessary to find Patti Shelby or Marty Shelby were government employees.

Although the Eighth Circuit Court of Appeals has not considered this issue, other courts have found that USPS contractors that transport or deliver mail are not USPS employees under the FTCA. *See, e.g. Chapman v. United States*, 480 F. Supp.3d 601, 610-11 (M.D. Pa. 2020)

(applying independent contractor exception to bar plaintiff's claims where contract required driver to wear a uniform and set forth a detailed mail delivery route, including precise order of turns down different streets); *Reyes Colon v. United States*, No. 18-1225 (PAD), 2019 WL 165578, at *1 (D.P.R. Jan. 10, 2019) (contractual provisions requiring driver to pick up and unload mail at certain time each day and use vehicles that meet certain technical specifications did not show that USPS directed driver's day-today operations); *Arbuthnot v. United States*, No. 17-1667-JWD-RLB, 2018 WL 6528461, at *2 (M.D. La. Dec. 12, 2018) (claims against USPS barred by independent contract exception where "[t]he contractors hire[d] their own drivers and provide their own equipment to deliver mail on specified routes"); *Estate of Anderson-Coughlin v. United States*, No. 3:16-CV-01492 (JAM), 2017 WL 6624020, at *3 (D. Conn. Dec. 28, 2017) (holding the following contractual requirements were insufficient to demonstrate USPS exercised control over contractor's day-to-day operations: (1) specific times for picking up and unloading mail each day, (2) technical specifications for mail transportation equipment, (3) standards for hiring subcontractors and vehicle maintenance, and (4) routine vehicle inspections); *Smith v. United States*, 727 F. Supp.2d 533, 536 (E.D. Tex. 2010) ("The USPS maintains only administrative control over [suppliers] such as [Independent Contractor Defendant,] Edwards.  The USPS can monitor Edwards to ensure that it is performing its contractual duties, but it does not have any daily hands-on supervision or oversight of how Edwards performs its contractual duties.") (internal citations omitted).

      Though the cases cited above are not controlling, they are persuasive because of the similarity of the contractual arrangements and applicable legal standards.  The Court, therefore, finds that the evidence the United States has offered in support of its Motion demonstrates that USPS did not exercise sufficient control over Patti Shelby or Marty Shelby to render either a government employee at the time of the accident.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant United States of America's Motion to Dismiss (Doc. 6) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is dismissed as to Defendant United States of America for lack of subject matter jurisdiction.

s/*Abbie Crites-Leoni*<br>
ABBIE CRITES-LEONI<br>
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of August, 2021.